## EGNER et al. v. E. C. SCHIRMER MUSIC CO.

### No. 1350.

District Court, D. Massachusetts.

Harold Horvitz and Samuel Berkett (of Guterman & Guterman), both of Boston, Mass., and Alfred Beekman, of New York City, for plaintiff.

H. L. Kirkpatrick and Fish, Richardson & Neave, all of Boston, Mass., and Francis Gilbert and Gilbert & Gilbert, all of New York City, for defendant.

SWEENEY, District Judge.

In this action the plaintiffs seek an injunction against further alleged copyright infringement of "The Caisson Song", and damages under the copyright statutes, Title 17 U.S.C.A.

It is alleged in the complaint that the song, which is sometimes known as "The Caissons Go Rolling Along", was composed by Edmund L. Gruber about 1908, and that prior to June 8, 1921, Gruber assigned to the plaintiffs Egner and Mayer

all his right, title, and interest in it; that Egner and Mayer published the song on June 8, 1921, in a manual of West Point songs, and copyrighted this compilation, and received from the Register of Copyrights a certificate of registration dated August 10, 1921. It further alleges that on or about January 23, 1936, the plaintiffs Egner and Mayer reassigned all their right, title, and interest to Gruber, reserving a license to publish and sell the said West Point compilation. It further alleges that on February 6, 1936, Gruber assigned and transferred to the plaintiff Shapiro, Bernstein & Co., Inc., all his right, title, and interest in the composition. The last assignment from Gruber to Shapiro, Bernstein & Co., Inc., also authorized it to institute and prosecute actions for copyright infringement. The pleadings go on to allege infringement by the defendant. The defendant denies infringement, denies that Gruber or any of the plaintiffs composed the song, asserts that its publication was taken from words and music in the public domain since the Civil War, and further asserts that such rights as the plaintiffs may have had, if any, have been lost through laches.

### Findings of Fact.

In 1908, Edmund L. Gruber, who was an officer in an artillery regiment of the United States Army, conceived the idea of writing a song on the occasion of the reunion of two portions of his regiment which had been long separated. In a very short period of time, measured by minutes, he and his brother officers wrote the words and music of "The Caisson Song". There is some question whether this was an original musical composition with Gruber, but so little has been shown in evidence of its having been in the public domain at that time that I find that Gruber was the composer and creator of this song. When introduced at the reunion it was received with acclaim, and by the time the first World War occurred the song was freely and popularly sung in all army cantonments.

In 1917 John Philip Sousa wrote "The U. S. Field Artillery March" in which he incorporated most, if not all, of the then currently popular "Caisson" song. In army cantonments, officers, who were detailed to instruct community and group singing, utilized this song freely. Up to that time and until 1921, Gruber took no action towards having the song copyrighted, protected, or licensed.

In 1921 the plaintiffs Egner and Mayer were both stationed at the Military Academy at West Point—one as a teacher of music, and the other as the organist and choirmaster. During that year they conceived the idea of compiling a book of popular West Point songs. This had the approval of the Commandant of the Academy, and they set about selecting the songs and arranging the form of their compilation. In every instance where the author of a particular West Point song was known they sought permission from him to include the song in their compilation. In the case of one song—"The Corps"—they purchased the copyright from a former army chaplain. They had been told about "The Caisson Song" by General Danford, the Commandant of West Point, and Danford sang the song to them so that they might set it down. The plaintiff Egner did not testify at the trial, but the plaintiff Mayer testified to the general conclusion that they obtained an assignment of all right, title, and interest from the composer Gruber, but could not state or remember whether that assignment was oral or written. Nor could he remember that the so-called assignment was made prior to the date of his copyright. I find that Gruber did not assign all of his right, title, and interest in the song in 1921 to the plaintiffs Egner and Mayer, but, at most, gave them permission to include the song in their West Point compilation. This book was called "Songs of the United States Military Academy" and included Gruber's song as "No. 15 Artillery Song—Caisson Song" at pages 26 and 27. This consent by Gruber to publish, as distinguished from an outright assignment, was consistent with Gruber's later conduct up to the year 1930, and was consistent with his prior conduct in allowing the song to be widely used both by the Army generally and by Sousa in particular. I cannot believe that Gruber did not have knowledge of the Sousa publication shortly after 1917, nor can I believe that he did not have knowledge that the song was being widely sung throughout the army cantonments during 1917 and 1918. The Sousa publication could not have escaped Gruber's notice, and a publication by such an eminent composer, not having been objected to by Gruber, constituted a practical abandonment by Gruber of his rights to a copyright. See Boucicault v. Wood, 3 Fed.Cas. page 988, No. 1,693. It constituted such a general publication of his work as to amount to a dedication of it to the public

use. After the plaintiffs Egner and Mayer copyrighted their West Point compilation, they took no steps to stop others from using "The Caisson Song".

Skipping next to the year 1929, I find that a salesman of the Hoover Vacuum Cleaner Company called at the home of Mrs. Gruber for the purpose of interesting her in the purchase of a new vacuum cleaner. At that time the Hoover people were using the melody of "The Caisson Song" in a radio broadcast, and Mrs. Gruber called the salesman's attention to the fact that this song was owned by her husband, and that the Hoover Company's unwarranted use of it merited a new cleaner, gratis. As a result of this conversation, the Hoover Company's agent talked with General Gruber, and became convinced that the song had been originated by Gruber, and so advised his employer. During the course of conversation the agent asked Gruber if the song had been copyrighted, and he told him that it had not been, but that it was going to be copyrighted shortly. Soon after the negotiations between the agent and Gruber, the Hoover Company published in a company magazine, "The Ibaisaic", a story of the birth of the song giving full credit to Gruber, the song itself, and a picture of Gruber and the agent, referred to above, together. This publication was used by the company's agents with Gruber's consent for the purpose of promoting sales, and particularly throughout the army cantonment where Gruber was stationed. In 1930 Gruber actually filed an application for copyright of the song. I find that the conduct of Gruber in dealing with the Hoover Company, and in applying for copyright registration in 1930 was inconsistent with the claim of Egner and Mayer of a complete assignment to them in 1921. I find that Gruber up to 1930, and indeed until 1936, retained all his right, title, and interest to the song, except insofar as he had licensed others to publish, or except as abandonment may have occurred through operation of law.

The plaintiff Shapiro, Bernstein & Co., Inc., hereinafter referred to as Shapiro, in 1933 published a song "The Last Round-up" which had a widespread popularity for a period of time. A middle portion of that song had a strong resemblance to "The Caisson Song". In 1936 the plaintiff Shapiro sought to purchase from Gruber an assignment of his copyright interest. Gruber called to its attention that Egner and Mayer had included the song in their West Point compilation in 1921. To avoid a claim on the part of Egner and Mayer of a right greater than the license to publish the song Shapiro secured an assignment of all of Egner and Mayer's rights to Gruber, subject to their right to publish and use the song in the West Point book. After this assignment had been made Shapiro took a complete and general assignment from Gruber. The plaintiff Shapiro must stand or fall on the Copyright Act, since it concededly had no common law interest in the composition.

In addition to the publications by Sousa and the use of the song in the various army cantonments, the publishing house of Leo Feist, Inc., published the song in 1918 in a publication entitled "Songs The Sailors and Soldiers Sing". The defendant Schirmer Music Company first published this song in 1921 in a book entitled "The Home & Community Song Book". This was the same year in which Egner and Mayer obtained their book copyright, but even prior to that the defendant's predecessor in title, the Boston Music Company, in 1919 had included the song in a compilation entitled "The Home & Community Song-Book". In 1926 the song was included in a book entitled "Field Artillery Manual" which was put out by the Banta Publishing Company of Wisconsin. All in all, the history of this song shows that it was early in its life dedicated to public use. The conduct of Gruber from 1908 at least through 1929 shows such a tender of the song to the public generally as to imply an abandonment of the right of copyright. See Werckmeister v. American Lithographic Co., 2 Cir., 134 F. 321, 68 L.R.A. 591, which was cited with approval by the Supreme Court of the United States in American Tobacco Co. v. Werckmeister, 207 U.S. 284, 28 S.Ct. 72, 52 L.Ed. 208, 12 Ann. Cas. 595.

The conduct of Gruber from the time of the artillery regiment reunion in 1908 up to the time of his application in 1930 for a copyright is consistent with a general publication of his work without a reservation of a right to copyright. In this he may have been induced by the knowledge that the song itself was dedicated to the army in which he had chosen his career. This same feeling may have impelled him to refrain from action against Sousa and to refrain from causing others during the first World War to refrain from using this song. Such rights as he granted

to Egner and Mayer in 1921 were not shown to be, and I am satisfied they were not, complete assignments of his interest in the composition, regardless of the fact that Egner and Mayer may honestly feel that such transfer was made. I find that the use of the song by Sousa and by the soldiers in the various cantonments was not such a limited publication as would save the rights of the composer. All in all, the whole picture shows an abandonment by Gruber of his rights to the exclusive use of the song and its complete dedication to the public use.

In addition to the abandonment theory, there is another bar to these plaintiffs maintaining this action against the defendant, and that is on the ground of laches. The defendant Schirmer Music Company had been publishing this song continuously since 1921, and through its predecessor corporation since 1919. There were many other publications of the song between 1908 and 1930 when Gruber first made application for his copyright. A delay of nearly a quarter of a century in asserting his rights to copyright may have been induced either by an intention to abandon such rights, or by an intention to wait such a long period of time as to make his own claim to originality more secure by reason of the disappearance during that period of other possible contestants to his title. In any event the delay was too great. If it could be found that Gruber did not abandon his claim for copyright and dedicate his song to the public, nevertheless, there is no explanation that has been made which would justify his failure to apply for such copyright until twenty-two years after the song had been written. All in all, the conduct of Gruber and the plaintiffs, who claimed title through him, was such as would warrant denying to them the exclusive rights to this song. See Sandler v. Katz, (June 8, 1925, S.D. New York) reported in U. S. Copyright Office Bulletin No. 20, 1924–35, Copyright Decisions, pp. 621–625.

The plaintiff Shapiro stands in no better position on the question of laches than Gruber for Gruber's delays are chargeable to his assignee. See Gillons v. Shell Co. of California, 9 Cir., 86 F.2d 600.

### Conclusions of Law.

From the foregoing, I find and rule that the plaintiffs Egner and Mayer are not copyright owners of the song in question.

I find and rule that the copyright issued to Gruber in 1930 was invalid by reason of the song being then in the public domain by his own abandonment.

I find and rule that the assignment by Gruber to Shapiro, Bernstein & Co., Inc., passed no right, title, or interest in the song to that plaintiff.

I find and rule that the plaintiffs are barred from maintaining this action by reason of laches.