## EDWARD B. MARKS MUSIC CORPORATION v. WONNELL et al.

District Court, S. D. New York.
May 8, 1945.

See also 4 F.R.D. 146.

Julian T. Abeles, of New York City (Julian T. Abeles and Leopold Bleich, both of New York City, of counsel), for plaintiff.

Irwin H. Clark, of New York City (Wm. B. Petermann, of Cincinnati, Ohio, of counsel), for defendants Harry S. Wonnell, Administrator, etc., and Sallie Black Waldo.

Isidore Scherer, of New York City (Charles H. Tuttle and Gerald J. Craugh, both of New York City, of counsel), for defendant Mattie E. Shanks.

CONGER, District Judge.

This is an action in the nature of an interpleader brought under 28 U.S.C.A. § 41, Sub. 26.

The case was tried to the Court without a jury.

Three parties are interested in this controversy: The defendants, Harry S. Wonnell, as administrator of the estate of Johnny S. Black (also known as John S. Black), deceased, Sallie Black Waldo and Mattie E. Shanks. Willie Icia Black (Kissick), a defendant, was served but did not appear.

The following is a brief summarization of the pertinent facts set forth in the complaint: That prior to December 9, 1915, said Johnny S. Black wrote the original musical composition entitled "Paper Doll" which was duly copyrighted by him on December 9, 1915. That htereafter the said musical composition was duly assigned by Johnny S. Black to plaintiff. That the said Johnny S. Black died, intestate, one year prior to the expiration of said copyright and that said Sallie Black Waldo as widow of Johnny S. Black, deceased, duly renewed and extended said copyright for the further term of 28 years, and that on November 11, 1943, she duly assigned said renewal copyright to plaintiff. That plaintiff is the sole proprietor of all the rights, title, and interest in and to said renewal copyright. That four claims have been made against plaintiff arising out of this copyright and renewed copyright as follows: By Harry S. Wonnell, as administrator;

by Sallie Black Waldo, widow of Johnny S. Black; by Willie Icia Black who also claims to be the widow of Johnny S. Black and by Mattie E. Shanks. That by reason of the conflicting claims of the defendants, plaintiff is in great doubt as to the rights of the defendants and as to which defendants are entitled to be paid the moneys that have become due under the copyright and the renewal copyright. That plaintiff had in its possession $15,220.17 payable under the copyright and $2,214.18 payable under the renewal copyright. That plaintiff has paid these two sums with the Registry of the Court to abide the judgment of this Court. Plaintiff prays that it be adjudged the sole owner of the said renewal copyright. That defendants be required to interplead and settle among themselves their respective claims and that plaintiff be discharged from liability in the premises.

The two defendants, Harry S. Wonnell, administrator, and Sallie Black Waldo do not dispute the title of plaintiff to the song, but rather by alleged facts support plaintiff's claim to title thereto, both to the original copyright and the renewal copyright; but they do assert that each is entitled to part of the fund, one as the administrator of Johnny S. Black to the moneys due Black under the copyright agreement and assignment and the other, as the widow of Johnny S. Black, to the moneys due under the renewal copyright agreement and assignment. Both ask for an accounting.

Defendant Mattie E. Shanks in her answer, however, by way of counter-claim and cross-claim alleges that she is the real owner of this song. That she was the joint composer of the song with Black, and that when he died she became the sole owner. She attacks plaintiff's title to the song and the right of the defendants to any of the moneys from the royalties of said song. She also attacks the validity of the renewal of the copyright and asks that it and the assignment thereunder be set aside and declared void. She also asks for an accounting from the plaintiff of all moneys due. At the trial, however, defendant Shanks by stipulation in open court withdrew any claim she might have or have had against the plaintiff concerning the title to the song, either because of the original copyright or the renewal of the copyright. In brief she, by this stipulation, recognizes the title of plaintiff to the song. She does claim, however, all the royalties or sums due by reason of the agreement made in connection with the assignment of the original copyright and the agreement made in connection with the assignment of the renewal copyright; so that now the real issue is the division of the funds due from the plaintiff under the royalty agreements.

At the outset, therefore, to clarify the issues, I find that plaintiff is the sole owner of the renewal copyright of the song "Paper Doll."

The following facts I believe are undisputed: On or about December, 1915, Johnny S. Black made application for copyright of a musical composition, "Paper Doll," not to be reproduced for sale. With the application he filed one complete copy of the words and music. In the application, the said Johnny S. Black stated he was the arranger of the music and the author of the words of the song.

A certificate of copyright registration was thereupon issued to the said Black by the Register of Copyrights. The copy of the song so filed bore the inscription "Words and music by John S. Black."

On or about September 12, 1924, Edward B. Marks Music Co. (plaintiff's predecessor) became the owner, by assignment from Black, of all his interest in and to said song and the original copyright thereof. In and by said assignment the said assignee agreed to pay the said Black a certain royalty on each copy of the song published and sold.

On August 27, 1942, plaintiff copyrighted the song as a published work.

Johnny S. Black died on June 9, 1936, a resident of the State of Ohio, leaving him surviving a widow, Sallie Black Waldo.

On November 9, 1943, Harry S. Wonnell was appointed, by the Probate Court of the State of Ohio (Butler County), administrator of the goods, chattels, etc., of the said Black.

The original copyright to the song expired on December 8, 1943.

During the year prior thereto and on November 13, 1943, Sallie Black Waldo, as "the widow of the author," renewed and extended said copyright.

On or about the same date the said Sallie Black Waldo assigned the said renewal copyright to the plaintiff and the plaintiff at the same time agreed to pay to the said Sallie Black Waldo, certain royalties due from the publication and use of the song

by the plaintiff under the said renewal copyright.

There are certain sums now due from the plaintiff for royalties due under the original copyright and also under the renewal copyright.

Perhaps it might be as good a time as any to mention the fact that this song rested in oblivion until some time during the summer of 1942. It was then sung by a popular radio singer and after that this song enjoyed marked popularity. Hence this lawsuit.

The defendants, Wonnell as administrator and Sallie Black Waldo have made out a prima facie case. Both claim title through Black. These defendants have made a prima facie case of title by the production of the original certificate of copyright registration which shows that the author of the lyrics and words of the song "Paper Doll" was John S. Black. Such a certificate is prima facie evidence of all that appears on its face. Gerlach-Barklow Co. v. Morris & Bendien, 2 Cir., 23 F.2d 159; Jerry Vogel Music Co., Inc. v. Forster Music Publishers, 2 Cir., 1945, 147 F.2d 614.

The burden of going ahead with the evidence is with defendant Shanks; to show that the title of Black and those claiming by and through Black is defective is upon her. She has the burden of proof in this respect and to prove that she has or had any interest in this song and the proceeds therefrom.

The defendant has undertaken this burden and has testified herself and others have testified on her behalf.

The defendant, Mattie E. Shanks, in attempting to meet this burden and to prove her case, took the witness stand herself. She testified that as a young girl she was gifted in music and dancing and was teaching dancing and playing the piano in various schools in Chicago at an early age. That in connection with her work as an instructor she wrote her own music. That she went on the stage as a solo dancer. That when she started to dance professionally she continued to create her own dances and make her own costumes and write her own music for the numbers she used. That she met Johnny S. Black at the end of 1914. That she wrote the song "My Doll" (the words and music). That she got the idea from Nell Brinkley's dolls, which Nell Brinkley drew for the newspapers.

That she called the piece originally "My Doll." That when she came to New York in 1915 with her brother she met Johnny S. Black and Andy M. Boyle, a pianist, at Remick's Music Publishing House. That she sang three songs there; the other two numbers were two other songs which she had written, "Adorable You" and "I Love You." That she became engaged to Black in 1915. That she brought with her from Chicago on the visit in 1915 the three songs: "Adorable You", "I Love You" and "My Doll." That the last song had two verses and a chorus. That she continued in musical vaudeville from 1915 to 1927 when she left the stage permanently. That during that time she played the leads in various Broadway productions and when she left the stage she was receiving a salary of between $400–500 per week.

Her testimony was that she wrote this song "Paper Doll," then named "My Doll" and brought the words and music to New York in 1915, where it was played by Boyle, the pianist, in the presence of Johnny S. Black. Mattie Shanks produced in corroboration of her story four witnesses. A brief resume of their testimony follows:

James W. Miller, who testified that he and Black in 1916, 1917 and 1918 were members of an act known as the "Three Chums"; that in the act they used this song "Paper Doll" a number of times; that Black spoke to him (Miller) about this song and told him that he (Black) would introduce him "to the little girl who wrote the song and who was responsible for this song"; that later Black did introduce him to Mattie E. Shanks who then had the stage name of Shirley Sherman; that Black said to him (Miller), "Here is the little girl who wrote that song"; that about this time Black said to Miller that he (Black) and Shirley Sherman would some day make a lot of money out of this song.

The next witness was Andy M. Boyle, who was a piano player and musician. He testified that he met Mattie E. Shanks known then as Shirley Sherman at Coney Island about 1915; that he was a piano player and band leader there; that Miss Sherman was accompanied by Black; that an appointment was made the next day for all three to meet at Remick's Music Publishing House so that Boyle could assist Miss Sherman with some new dance routines; that the next day they did meet, Boyle, Miss Sherman and Black; that Miss

Sherman worked with said Boyle in connection with some dance music and that then Miss Sherman produced three manuscripts of the three songs: "Adorable You", "I Love You" and "My Doll"; that he (Boyle) liked this doll song and the question of copyrighting the song came up and he (Boyle) suggested it be copyrighted in the name of Black and that Black then stated, "It's a family affair anyway. It's going to be a man and wife proposition"; that at that time someone said (the witness thought Miss Sherman), "Let's call it 'Paper Doll'." The witness further stated that, "That is the way 'Paper Doll' was born."

Miss Sherman produced as a witness her brother, Sidney Shanks, who testified among other things that Black visited the Shanks' home in the latter part of 1915 or 1916; that Black and Mattie Shanks played a number of songs on the piano, particularly this doll song and that Black remarked in connection with that song, "She's got something there," and that they, Mattie Shanks and Black, had it together but that he was going to copyright it.

The last witness was Black's foster father, Huber. He testified that he met Mattie Shanks in 1915 when Black brought her to his mother's home; that on one of the visits Black told him with reference to this "Paper Doll" song that they (Black and Shirley Sherman) had it in partnership; that he (Black) had had it copyrighted the previous year and that the survivor was to take all; that it was Shirley's piece.

It also appears from the testimony that Black and Mattie Shanks were married in May, 1918, and that Mattie Shanks divorced Black in 1924; that Black died in 1926. Mattie Shanks is now Mattie Shanks Goeller.

It also appears from the evidence in the case that Johnny S. Black was a well-known musician; that he had written a number of musical compositions and arrangements, some of which were quite successful.

If the above testimony of Mattie Shanks and her witnesses is to be believed, there is only one conclusion that can be drawn and that is that Mattie Shanks was the author in the main of this song "Paper Doll."

The attorney for the other defendants contends that this testimony is not creditable; that the witnesses have discredited themselves and that they were confused. In support thereof he has picked out a number of instances where inaccuracies have occurred in the testimony and instances which he contends show that the witnesses were confused and that their testimony was unconvincing. I have gone into this very carefully. Some of the criticism of this testimony is not justified. Some is. Some of the inaccuracies pointed out are innocuous. Some are only what one would expect of witnesses giving testimony of what occurred 25 years ago. Some of the witnesses are interested, Mattie Shanks herself and her brother.

One of the witnesses (Boyle), seemed to me, related some circumstances which could only be born out of his imagination, yet from anything which I could find, he was uninterested. He wasn't particularly acquainted with Mattie Shanks but had been a great personal friend of Black.

The witness Lewis Huber (foster father of Black) is 71 years of age. He seemed to be a rather slow and unresponsive witness at times and yet at other times prompt in his answers. Whether or not he is interested, I am unable to say. It would seem, at least from his testimony, that he claims some interest in part of the royalties in dispute, and might be said to be testifying against his interest. He apparently is very friendly with Mattie Shanks. During the trial he was living here in New York with her brother. He was not too satisfactory a witness.

One witness, Miller, impressed me very much. He was absolutely disinterested as far as I could tell. He is not related to Mattie Shanks. His recollection is that he hadn't seen her from 1915 until about a year before the trial. He had never visited her at her home. Down through the years he had never seen her. His statements were positive and direct. It is so important that I quote several of them in which he is referring to what Black said to him in 1917 or 1918 about this song and about Mattie Shanks and the connection of Mattie Shanks with this song:

"Some day I am going to introduce you to the little girl who wrote the song, who *is responsible* for this song."

"The witness: He told me he would introduce me to the girl that wrote that song.

"Q. Did he mention any name in that connection at all? A. No, he said that,.

later, that he would introduce me to the girl and he finally did.

"Q. When was that, that he finally did? A. Well, it was quite a few months after. We were working in the Beacon Hotel in Buffalo and this was when I met Shirley Sherman. She was a dancer in the show at the time and he says, 'Here is the girl that wrote the song.'"

At the end of the trial I was rather impressed with the testimony given by the defendant Mattie Shanks and her witnesses. Since then I have read over the minutes, considered the testimony in connection with the law applicable to this type of case. I realize that this type of testimony should be scrutinized closely; that testimony given of occurrences 25–30 years before m'ght be tinged with the desire to aid the litigant; witnesses might be mistaken after such a long period of years, also a story might easily be fabricated which would be hard to disprove; that this type of evidence is frequently unsatisfactory.

■ I realize that in order to succeed Mattie Shanks should prove her case by clear and satisfactory evidence; that her evidence should be scrutinized with great care and perhaps even with suspicion.

With all this in mind I have come to the conclusion, however, that Mattie Shanks has met the burden which the law imposes upon her. I am satisfied from the evidence that she, a person with considerable talent as a musician, was the main author and did write in the main the words and music of the song "My Doll"; that in the year 1915 Mattie Shanks came to New York where she met Andrew Boyle, a musician, and Black; that on that visit Boyle played the song "My Doll" at Remick's Music Publishing House in New York City; that as the result of a conversation there held, the name of the song was changed to "Paper Doll"; that Black agreed to have it copyrighted in his name and that Black did have this song copyrighted in his name; that Mattie Shanks first met Black in 1914; that she became engaged to him in the summer of 1915 when she came to New York; that she was married to him in 1918 and divorced him in 1924.

I have come to the above conclusion after a review of the testimony. There can be no question of mistake here or of faulty memory in the main. These witnesses are either telling the truth in the main or they are committing perjury. I can't see where there can be any middle road. The story told by each of these witnesses is either essentially true or it is not. I can't conceive that all of these witnesses committed perjury.

I have above criticized the nature and character of their testimony and I have come to the conclusion that adding it all up that Mattie Shanks was the main author of the words and music of this song "Paper Doll" and that she did collaborate with Black, he completing it so that it might be copyrighted.

■ I, therefore, hold that when Black took out this copyright, he took it out for himself and Mattie Shanks; that when Black copyrighted this song in his own name it was a copyright upon a joint work and that he (Black) as the copyright owner held the copyright with a trust impressed upon it, a trust for the benefit of Mattie Shanks and that the renewal of the copyright taken out by the defendant Sallie Black Waldo is held by her with a constructive trust imposed upon it for the benefit of Mattie Shanks. See Edward B. Marks Music Corporation v. Jerry Vogel Music Co., 2 Cir., 140 F.2d 266.

■■ I am convinced that when Black took out the original copyright to the song that it was a joint venture; that he took out the copyright for himself and his then fiance, Mattie Shanks. I am not impressed, however, neither do I hold with the contention of Mattie Shanks that the survivor was to take all. In other words that this was to be a joint tenancy with the right of survivorship. In coming to this conclusion I am impressed by the fact that it was never the intent of these two parties to make a testamentary disposition of the title to this song. Passing on a question of this kind and in determining as to the intent of the parties, one must look at the surrounding circumstances. When the conversations were had which led to the copyrighting of this song, Black and Mattie Shanks were engaged to be married; no doubt very much in love. The idea, undoubtedly, was as expressed by the conversations testified to, that they were soon to be man and wife; that whatever one had belonged to the other; that would be the natural thought in the minds of each. I certainly can't conceive that they had in mind that if divorced there would still be a right of survivorship. It seems to me it would be inequitable to hold here that this oral agreement made between the two was ever in-

tended to cover such a situation. Such oral agreements are frowned upon by the Courts and should only be enforced when they have been established by evidence so strong and clear as to leave no doubt and when the result of enforcing them would not be inequitable or unjust. See Hamlin v. Stevens, 177 N.Y. 39, 69 N.E. 118.

It seems to me it would be inequitable to take from the defendant Sallie Black Waldo any right or benefit which should come to her by reason of her renewal of the copyright. Had she not renewed the copyright, this song would undoubtedly be in the public domain.

It is significant to note that Mattie Shanks testified that she heard this song played publicly in October or November, 1943. She apparently consulted an attorney at that time and notified the plaintiff of her interest in this song. Her claim then was that "she was co-writer with Johnny S. Black of the musical composition 'Paper Doll.'" There is nothing in the case to indicate what Black did in collaborating with Mattie Shanks. There is testimony, however, which would indicate that there were some changes made in either the music or the words from the original copy, brought by Mattie Shanks to New York, which original copy, it might be noted here, was not the one filed when the application was made for copyright.

In her answer and cross-complaint interposed herein, Mattie Shanks alleged that she and Johnny S. Black entered into an agreement in and by which they "agreed to collaborate each with the other in the creation and writing of a musical composition, and that the said musical composition thereafter was by them called and came to be known as 'Paper Doll'" (Par. 11); that pursuant to said agreement and in fulfillment thereof, she, Mattie Shanks and Johnny S. Black "created and wrote in collaboration the aforesaid musical composition which thereupon was and now is named and entitled 'Paper Doll'" (Par. 13).

My attention has been called by the attorney for the defendants Wonnell and Waldo to a decision handed down recently by the United States Circuit Court of Appeals for the Second Circuit. Jerry Vogel Music Co. v. Forster Music Publisher, 2 Cir., 147 F.2d 614, 615.

The attorney for these defendants contends that this decision is applicable to this case. I can't see that it is. In the Vogel case, both the District Court and the Circuit Court of Appeals held that evidence introduced in support of a contention similar to the one made here by Mattie Shanks, was not sufficient to overcome the presumption of authorship in favor of the one who obtained the original copyright. The Circuit Court of Appeals said this in the Vogel case:

"We do not, under familiar rules, undertake to weigh the evidence to determine its preponderance. The appellee established a prima facie case by producing the copyright certificate, and while the ultimate burden was upon it to establish its right to a declaratory judgment of sole ownership of the copyrighted publication, the appellant had the burden of establishing its affirmative defense, and we are not persuaded that the District Judge was clearly wrong in holding that it failed to do so."

I hold here that there is this same presumption which is obtained from the production of the copyright certificate, but I hold here that the evidence has overcome that presumption. An examination of the testimony in the Vogel case indicates that the other testimony produced was not clear and one might very well hold that it was not sufficient to overcome the prima facie case made by producing the copyright certificate. I hold differently here.

■ We now come to the question of laches. There was not a great deal said of this at the trial, but it is a question which has given me much concern. Mattie Shanks made no claim apparently to this song until November 24, 1943. I know that claims of this type made so many years later may very well be frowned upon and discredited, but after all delay alone in asserting a claim is seldom a bar. That which converts passage of time into laches is some prejudice to one of the parties. In re Stilwell, 2 Cir., 120 F.2d 194.

■ Certainly the plaintiff has not been prejudiced in any way. The only prejudice that could come to the other two defendants here is the difficulty in obtaining witnesses after this period of time. This is the thing which has given me a great deal of thought. The peculiar facts of the case, however it seems to me, justify the non-application of the doctrine of laches here, although as I have said this question has given me a great deal of trouble and concern and some doubt. This is a peculiar situation. This song after it was copyrighted apparently never had any vogue. It laid on the shelf. It was appar-

ently dead. It never came to life until some time in 1942, when a popular radio performer sang it over the radio. At once it seemed to take hold and became a so-called popular song overnight. There was no reason for Mattie Shanks ever to make any claim up to this time. She did make a claim, as she says, shortly after she heard the song on the radio.

A similar situation arose in the case of Jerry Vogel Music Co. v. Forster Music Publisher, supra. In that case there had been a claim made after some 25 years by a man who claimed to be a co-collaborator in a song "Down by the Old Mill Stream." In that case the question was raised that the claimant was guilty of laches. An examination of the brief on appeal interposed by the attorney for the opposition indicates that practically the same cases were cited there as are cited here in support of the defense in laches, but the Circuit Court of Appeals apparently passed by or did not consider that defense, except that they did state that the fact that the claimant in the Vogel case had made no legal claim to the copyright during almost 28 years was a circumstance to be considered by the Court upon the issue of co-authorship. In other words, they held that it was to be an evidentiary circumstance to be considered by the Court in passing upon the strength of the claimant's case. This case is a bit different in that respect. The song in the Vogel case was popular during practically the whole 28 years. The song in this case was never popular until about 28 years after it had been copyrighted.

There is another issue to be disposed of which is between Sallie Black Waldo and the plaintiff herein. She claims that when she assigned the renewal copyright to the plaintiff herein she only warranted "that she is the widow of Johnny S. Black, the writer of said work" and that she had not previously disposed of her interest in the song and her right to renew the contract. Her contention is that no matter what happens, the plaintiff agreed to pay her certain compensation and this they must pay her in any event no matter what the result of this lawsuit is.

I hold against this defendant in this contention. Whatever she has here she has under the statute, because she is the widow of Johnny S. Black. The plaintiff by the assignment took all the right and interest in and to the renewal copyright. From an examination of the papers which were executed by this defendant and the plaintiff in connection with this assignment it clearly appears that the plaintiff was to have the sole and exclusive right to this renewal copyright for which it was to pay a certain royalty to Sallie Black Waldo who succeeded to the interest of Johnny S. Black as his widow. This interest as I have heretofore held is impressed with a trust in favor of Mattie Shanks.

I, therefore, hold that Harry S. Wonnell, as administrator of the estate of Johnny S. Black, and Mattie E. Shanks are entitled to share equally in the royalties which were due under the original copyright and that Mattie Shanks and Sallie Black Waldo are entitled to share equally in the royalties due and to become due from the plaintiff upon the renewal copyright.

If the parties are unable to agree as to the division of the royalties due, then I will provide for an accounting to be had before a Special Master.

Settle decree on notice.