David Pancost JACKSON, Jr.,
Plaintiff–Appellant,

v.

Hoyt AXTON, dba Lady Jane Music;
Rondor Music International, Inc.,
Defendants–Appellees.

David Pancost JACKSON, Jr.,
Plaintiff–Appellee,

v.

Hoyt AXTON, dba Lady Jane Music;
Rondor Music International, Inc.,
Defendants–Appellants.

Nos. 92–56580, 93–55423.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 6, 1994.

Decided June 6, 1994.

---

Evan S. Cohen and S. Martin Keleti, Cohen and Luckenbacher, Los Angeles, CA, for plaintiff-appellant-plaintiff-appellee.

Russell J. Frackman and Jeffrey D. Goldman, Mitchell, Silberberg & Knupp, Los Angeles, CA, for defendants-appellees-defendants-appellants.

Before: HUG, WIGGINS, and NOONAN, Circuit Judges.

Opinion by Judge WIGGINS.

WIGGINS, Circuit Judge:

## I.

"Joy to the World" (the "Song") was composed in 1970.[1] One day that year, Hoyt Axton rented a studio in order to record a demo tape of his solo musical work. He hired a band. David P. Jackson, Jr. was to play piano. The group recorded four or five Axton compositions. Axton had previously composed fragments of the Song. Just before the recording session ended, Axton, with

---

1. Because Jackson, plaintiff-appellant, lost below on summary judgment, the facts are summarized here in the light most favorable to him. *Sawyer v. County of Sonoma*, 719 F.2d 1001, 1003 n. 2 (9th Cir.1983).

the group's help, attempted to complete the fragments and record the Song. Axton finished the lyrics. Jackson contends that he, Jackson, wrote much of the music. The Song was later released on Axton's solo album, in late 1970 or early 1971. Soon thereafter, Axton registered for copyright as sole author and owner of all versions of the Song. Axton was issued copyright registration reflecting that exclusive claim.

For some time after the Song was written, however, Axton routinely told live audiences that the Song was written by himself and "D.P.J.J.R.," Axton's nickname for Jackson. One night, after the band had performed in public, Axton asked Jackson to sign a songwriter's agreement conveying Jackson's rights in the Song to Axton's company in exchange for royalties. Jackson refused. In 1975, Jackson asked Axton if Axton would buy Jackson's interest in the Song for a lump sum. Axton refused, saying Jackson had nothing to do with writing the Song. But in late 1975, Axton said in an interview with a magazine that Jackson "co-wrote" the Song.

After 1975, Jackson no longer asked Axton for compensation. Jackson asserts that he respected Axton and felt Axton would eventually do the right thing. Jackson knew in 1976 that he could file suit but felt litigation would not be the right way to address the problem. Axton has since that time licensed the Song numerous times for use in films, TV shows, commercials, etc. The Song is Axton's best-known work. Jackson has never been credited on any published version of the Song. In 1991, Jackson began again to perform in Axton's band. At that time, the issue of who wrote the Song's music surfaced again after Axton claimed sole authorship of another song that Jackson had clearly helped write. Jackson filed the instant suit shortly thereafter.

Jackson's complaint seeks (1) a declaration that he coauthored the Song with Axton and (2) an accounting for profits. Because Axton had recently licensed the Song to Rondor Music International, Inc. ("Rondor"), Jackson's complaint names as defendants both Axton and Rondor ("Appellees"). Appellees moved for summary judgment, arguing Jackson's suit was barred by both laches and the statute of limitations, 17 U.S.C. § 507(b). Appellees also argued that any work done by Jackson on the Song was merely "work for hire." The district court held Jackson's action was barred by laches. *Jackson v. Axton,* 814 F.Supp. 42, 43–44 (C.D.Cal.1993). The court found that Jackson's delay presumptively prejudiced Axton. The court also found actual prejudice in that since 1970 circumstances have changed, memories have faded, and relevant evidence has been destroyed. *Id.* at 44. The district court denied Axton and Rondor's request for attorney's fees. All parties appealed, and the appeals have been consolidated.

## II.

Jackson argues that laches should never be a defense to an action seeking a declaration of coauthorship or co-ownership. He also argues that, even if laches may be a defense, summary judgment in this case is inappropriate because a dispute exists as to material facts.

### A. The Availability of Laches as a Defense

■ Whether laches may be a defense to an action seeking a declaration of coauthorship of a copyrightable work and co-ownership of the copyright is a question of law. It is therefore subject to de novo review. *United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

Jackson asserts that *Neva, Inc. v. Christian Duplications Int'l, Inc.,* 743 F.Supp. 1533, 1548 (M.D.Fla.1990), holds that laches cannot apply. Jackson would have us adopt his reading of *Neva.* Jackson concedes, however, that two other cases imply that laches may apply: *Edward B. Marks Music Corp. v. Wonnell,* 61 F.Supp. 722, 728–29 (S.D.N.Y. 1945) (assuming that laches may apply, but holding laches factually inapplicable in that case), and *Stone v. Williams,* 873 F.2d 620 (2d Cir.) (applying laches to bar a claim) ["*Stone I* "], *cert. denied,* 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362, *vacated, Stone v. Williams,* 891 F.2d 401 (2d Cir.1989) (vacating *Stone I* on rehearing because new facts tipped the equities the other way) ["*Stone*

II "], *cert. denied*, 496 U.S. 937, 110 S.Ct. 3215, 110 L.Ed.2d 662 (1990). The district court relied on *Stone I*. 814 F.Supp. at 43. Jackson contends this reliance was misplaced because *Stone I* was vacated on rehearing.

Jackson also claims that applying laches to coauthorship/co-ownership claims is inconsistent with the statute of limitations applicable to copyright actions, 17 U.S.C. § 507(b). Specifically, Jackson asserts that filing an invalid copyright claim is not copyright infringement and neither starts the statutory limitations period (for infringement actions) running nor tolls it, *Austin v. Steiner*, 207 F.Supp. 776, 779–80 (N.D.Ill.1962). Jackson claims the same rule should apply with respect to laches: Jackson's ability to claim ownership or make a copyright filing should not start a clock running that might result in a finding of unreasonable delay or laches. In support, Jackson notes that in *Wonnell* and *Goodman v. Lee*, 815 F.2d 1030 (5th Cir. 1987), no co-ownership claim was brought until decades after composition of the works at issue, yet the court in neither case dismissed the claim on statute of limitations or laches grounds.

Finally, Jackson claims laches does not apply to future violations. *Hayden v. Chalfant Press, Inc.*, 177 F.Supp. 303, 307 (S.D.Cal.1959), *aff'd*, 281 F.2d 543 (9th Cir. 1960). Jackson asserts that this aspect of laches gives him a new, unbarred claim each time Appellees exploit the Song.[2]

In rebuttal, Appellees argue that this court should follow *Stone I* and *Wonnell*. Appellees contend *Neva* is inapposite. In *Neva*, the plaintiff, the registered copyright owner, sued for infringement and included a claim for a declaration of ownership. Appellees explain that laches was not applied to bar the plaintiff's declaration claim because the plaintiff, the obvious owner of the copyright, never needed to prove his ownership prior to bringing the infringement claim. Delay in seeking an unnecessary declaration could not be used to bar a recognized copyright owner's assertion of his rights. Thus, Appellees conclude, *Neva* did not hold that laches is unavailable as a defense; *Neva* held merely that laches was inapplicable in that case. 743 F.Supp. at 1548; *see Pamfiloff v. Giant Records, Inc.*, 794 F.Supp. 933, 937 (N.D.Cal. 1992). *Goodman* is also inapposite, Appellees claim, because *Goodman* addressed only subject matter jurisdiction, not laches. 815 F.2d at 1030–31.

Appellees also assert that the principles governing statutes of limitations differ from those governing laches. Statutes of limitations bar claims only upon the passage of time; laches bars claims because prejudice would otherwise result to the defendant. Appellees claim Jackson's delay made their defense substantially more difficult. This fact is enough to support application of laches, Appellees claim, even if no statute of limitations period would have run. Finally, Appellees note that a claim seeking a declaration of property ownership is a classic, equitable claim to which laches may be applied.

 This is an issue of first impression in the Ninth Circuit. We hold that laches may be a defense to an action seeking a declaration of coauthorship (and resulting co-ownership) of a copyrightable work. Claims

---

2. In a related argument, Jackson notes that *Stone v. Williams*, 970 F.2d 1043 (2d Cir.1992) ["*Stone III* "], *cert. denied*, —— U.S. ——, 113 S.Ct. 2331, 124 L.Ed.2d 243 (1993), held that an action seeking a declaration of ownership was not barred by the statute of limitations except insofar as the substantive remedy concurrently sought (i.e., an accounting or damages for infringement) was independently barred by the statute of limitations. Thus, under *Stone III*, if infringement occurred more than three years (*see* 17 U.S.C. § 507(b)) prior to the filing of the action and had not occurred since, both the infringement claim and the claim seeking a declaration of ownership would be barred. But if infringement occurred less than three years prior to suit being filed, then neither the infringement nor the declaratory claim would be barred. 970 F.2d at 1047–52.

We express neither agreement nor disagreement with *Stone III*. We need not address the question. At issue in this case is laches, not the statute of limitations. As we explain *infra*, laches is premised on prejudice, not only delay. Statutes of limitations are premised on delay, not prejudice. Moreover, a party may be unduly prejudiced by delay even though a statute of limitations does not bar a claim. Thus, even if the statute of limitations did not apply to Jackson's suit, Jackson's claims might still be barred by laches. *Stone III* is therefore inapposite and of no help to Jackson.

of ownership are traditionally subject to the defense of laches. *E.g., Shelton v. Daniel,* 236 Ark. 454, 366 S.W.2d 709, 711–12 (1963) (holding claim to ownership of property barred by laches); *Poore v. Poore,* 210 Ga. 371, 80 S.E.2d 294, 295 (1954) (same); *Tristram's Group, Inc. v. Morrow,* 22 Mass.App. 980, 496 N.E.2d 176, 178 (1986) (same); *Aspinwall v. Ryan,* 190 Or. 530, 226 P.2d 814, 818–19 (1951) (same).

Moreover, other cases imply that laches may bar a claim for ownership of a copyright. *Edward B. Marks Music Corp. v. Charles K. Harris Music Pub. Co.,* 255 F.2d 518, 522–23 (2d Cir.) (rejecting a laches claim on only factual grounds), *cert. denied,* 358 U.S. 831, 79 S.Ct. 51, 3 L.Ed.2d 69 (1958); *Wonnell,* 61 F.Supp. at 728–29 (same). That these cases did not address coauthorship but only co-ownership does not render them inapposite. Jackson actually seeks a declaration of ownership; declaring that Jackson is an author would be without legal effect in this case unless he is also declared a co-owner.

 *Neva* and *Goodman* are distinguishable for reasons noted by Appellee. Moreover, rules applicable to statutes of limitations do not necessarily apply to laches. Though both laches and statutes of limitations may give defendants repose, laches, unlike a statute of limitations, is premised on a showing of prejudice. Thus, as Appellees note, laches may apply whether or not any statutory limitations period runs. Finally, laches is not applied here to a "future violation" as that term is used in *Hayden.* This is not an infringement case but one seeking a declaration of coauthorship. The disputed events regarding authorship of the Song took place long ago and cannot take place again in the future.

## B. Disputed Issues of Material Fact

### 1. Standard of Review

Ninth Circuit cases appear to conflict as to the standard of review applicable in this case. This court has reviewed a grant of summary judgment on grounds of laches both de novo and for abuse of discretion. *Compare Soules v. Kauaians for Nukolii Campaign Comm.,* 849 F.2d 1176, 1180 (9th Cir.1988) (reviewing de novo), *with Corrington v. Webb,* 375 F.2d 298 (9th Cir.) (reviewing for abuse of discretion), *cert. denied,* 389 U.S. 930, 88 S.Ct. 292, 19 L.Ed.2d 282 (1967). We would affirm the district court regardless of the standard, however. Thus, any conflict in our case law need not be resolved here.

### 2. Merits

Jackson claims that whether prejudice resulted to Appellees is a disputed, material fact. Conceding that some prejudice is presumed, Jackson argues that he has rebutted the presumption in this case. *See Boone v. Mechanical Specialties Co.,* 609 F.2d 956, 958 (9th Cir.1979) ("The bare fact of delay creates a rebuttable presumption of prejudice." (internal quotations omitted)). Jackson denies the presence in this case of facts showing prejudice, such as unavailability of witnesses, dulling of memories resulting from the passage of time, and loss of relevant records. *Eisenman Chemical Co. v. NL Indus.,* 595 F.Supp. 141, 147 (D.Nev.1984) (identifying these factors as relevant to prejudice). Jackson contends that (1) almost all people present when the Song was written can testify; (2) Axton and four out of five persons in the band have testified; (3) no relevant documents have been lost; and (4) the loss of the document on which Axton wrote the lyrics is irrelevant to how Jackson wrote the music.

Jackson also argues that Axton is to blame for any detriment resulting from Jackson's silence. If Axton chose to ignore Jackson's claims, Axton acted at his own risk. Jackson claims that even if Jackson's silence caused Axton or Rondor prejudice in view of Axton's sale of the Song to Rondor, the court could remedy such prejudice either by undoing the sale or ordering that Jackson share in the income Axton receives from Rondor.[3]

---

**3.** In his reply brief, Jackson argues for the first time that Axton is guilty of unclean hands for willfully violating Jackson's rights and therefore cannot take advantage of laches, an equitable doctrine. *See Key West Hand Print Fabrics, Inc. v. Serbin, Inc.,* 269 F.Supp. 605, 611 (S.D.Fla. 1966), *aff'd,* 381 F.2d 735 (5th Cir.1967). Because this argument was raised only in the reply brief, it has been waived. *Estate of Ferdinand E. Marcos Human Rights Litigation,* 978 F.2d 493,

Finally, Jackson claims he did not wait too long to sue. The renewal period for the copyright will not begin for several years. Compared to the plaintiffs in *Wonnell, Goodman,* and *Stone II,* in which only the right to the renewal period was at issue, Jackson has sued in a timely manner, he claims.

In rebuttal, Appellees claim that Jackson has waited too long to sue and that no real dispute as to prejudice exists. Jackson knew in 1971 that Axton was not giving Jackson credit for the Song, when Axton was listed as sole author of Axton's solo album. If Jackson did not know in 1971, he knew by 1975, when Axton denied that Jackson participated in the composition. The existence of the renewal term does not make Jackson's silence any more excusable or resulting prejudice any less detrimental.

Appellees claim Jackson's delay caused a presumption of prejudice. In some cases, the excuse for delay is so insubstantial that the presumption remains in spite of evidence contrary to it. *Larios v. Victory Carriers, Inc.,* 316 F.2d 63, 67 (2d Cir.1963). Jackson's excuses for delay were few: that he was not a "litigious person"; that "divine justice would be served"; and that he trusted Axton. Appellees claim these excuses were so insubstantial that Appellees need show no prejudice or only very little. *See, e.g., Egner v. E.C. Schirmer Music Co.,* 48 F.Supp. 187, 187–90 (D.Mass.1942), *aff'd,* 139 F.2d 398 (1st Cir.1943), *cert. denied,* 322 U.S. 730, 64 S.Ct. 947, 88 L.Ed. 1565 (1944).

Appellees also claim that substantial, actual prejudice occurred here, either from a change in circumstances that would not have occurred but for the delay, or from loss of evidence. *See Gull Airborne Instruments, Inc. v. Weinberger,* 694 F.2d 838, 844 (D.C.Cir.1982) (stating that those factors indicate prejudice). Here, Appellees have shown that circumstances have changed in a way that would not have occurred had Jackson sued earlier. Axton has arranged his business affairs around the Song, promoted the Song as his own, licensed the Song many times to third parties, and sold the Song to Rondor. Appellees have also shown loss of evidence: memories have faded, and testimony contains inconsistencies, gaps, and in some places speculation instead of memory. Even Jackson admits memory lapses as to some facts. The paper on which Axton wrote the lyrics (relevant to impeach other witnesses' testimony and support Axton's version of the facts) has been lost. The recording studio (with its records) no longer exists. Some witnesses, such as the sound engineer, cannot be identified.

■ Appellees claim Axton's knowledge of Jackson's claim of ownership is irrelevant. Laches is based on the plaintiff's delay in beginning litigation, not on the information a defendant has regarding a claim. *Nealey v. Transportacion Maritima Mexicana, S.A.,* 662 F.2d 1275, 1279 n. 6 (9th Cir.1980). Appellees also note that Jackson has never explained how a court could "undo" or renegotiate the sale to Rondor or account for co-ownership of the most significant song in the sale.[4]

■ We affirm the district court's grant of summary judgment. Jackson's claim was brought late. He has been able to sue since at least 1975, and possibly since 1971, when he learned that Axton claimed sole ownership of the Song. The existence of a renewal term does not shorten Jackson's delay or make the delay any less prejudicial. *Stone II* is distinguishable because there the defendants played a role in hiding the plaintiff's claim. *Stone II,* 891 F.2d at 404–05. *Wonnell* is distinguishable because the plaintiff there had no reason to sue until the work she owned became popular. 61 F.Supp. at 728–29.

For reasons noted by Appellees, the presumption of prejudice resulting from Jackson's delay has not been rebutted. And, as Appellees outline, Appellees have been actually prejudiced by Jackson's delay. Jackson's counter-arguments are unavailing.

495 n. 2 (9th Cir.1992), *cert. denied sub nom., Marcos–Manotoc v. Trajano,* —— U.S. ——, 113 S.Ct. 2960, 125 L.Ed.2d 661 (1993).

**4.** Amicus National Music Publishers' Association, Inc. argues that in this case application of laches or the statute of limitations is proper and supports the repose necessary to the functioning of an orderly copyright market.

That band members testified, as Jackson claims, does not mean that their memories have not faded or that relevant evidence has not been lost. That Jackson feels he can prove his own case without great difficulty does not mean that Appellees have not been harmed. Moreover, numerous business transactions have been made in reliance on Axton's sole ownership of the Song.

That Axton knew Jackson claimed to have helped write the Song is irrelevant. Even if Jackson did help compose the music, a fact not yet established, Axton might have thought that Jackson's efforts were merely work for hire, or Axton may have been mistaken and thought Jackson did little actual composition. Axton's refusal to credit Jackson gave Jackson grounds, if any, to sue. Jackson's delay in suing is what has prejudiced Appellees, not Axton's actions with regard to a disputed claim.

### III.

The district court denied Appellees attorney's fees, requested pursuant to 17 U.S.C. § 505.[5] When the district court refused to grant attorney's fees, controlling authority in this circuit held that attorney's fees were unavailable to a defendant under § 505 unless the plaintiff's action was frivolous or in bad faith. *Cooling Systems & Flexibles, Inc. v. Stuart Radiator, Inc.,* 777 F.2d 485, 493 (9th Cir.1985).

Since that time, *Cooling Systems* has been overruled. *Fogerty v. Fantasy, Inc.,* —— U.S. ——, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). Under *Fogerty,* courts determining whether to grant attorney's fees are to exercise "equitable discretion ... 'in light of the considerations [the Court has previously] identified.'" *Id.* at ——, 114 S.Ct. at 1033 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 436–37, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)). Such considerations include, but might not be limited to, the degree of success obtained, *Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941; frivolousness; motivation; objective unreasonableness (both in the factual and legal arguments in the case); and the need in

particular circumstances to advance considerations of compensation and deterrence. —— U.S. at —— n. 19, 114 S.Ct. at 1033 n. 19. Courts should keep in mind the purposes of the Copyright Act (to promote creativity for the public good) and apply the factors in an evenhanded manner to prevailing plaintiffs and prevailing defendants alike. *Id.; id.* at ——, 114 S.Ct. at 1028.

We remand Appellees' attorney's fee claim. *Fogerty* gives the district court greater discretion than did *Cooling Systems. See id.* at ——, 114 S.Ct. at 1033. The district court should be able to exercise that discretion under the present standard. *Id.* On remand the district court should also consider whether Appellees should be granted attorney's fees pursuant to § 505 for work done on this appeal.

### IV.

For the foregoing reasons, the district court's judgment is AFFIRMED. In view of our disposition, we need not and do not decide whether Jackson's suit is also barred by the statute of limitations or whether Jackson's contribution to the Song, if any, was work for hire. Appellees' request for attorney's fees is REMANDED for consideration in light of *Fogerty.*

---

5. The statute provides: "Except as otherwise provided by this title, the court may ... award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.