**THOMAS WILSON & COMPANY, Inc.,**
Plaintiff-Appellee,

v.

**IRVING J. DORFMAN COMPANY, Inc.,**
Defendant-Appellant.

No. 48, Docket 34703.

United States Court of Appeals,
Second Circuit.

Argued Sept. 23, 1970.

Decided Oct. 16, 1970.

**410**

Armand E. Lackenbach, New York City (Lackenbach & Lackenbach, New York City, on the brief), for defendant-appellant.

Alan Latman, New York City (Cowan, Liebowitz & Latman, Arthur J. Greenbaum, Martin J. Bluestein, New York City, on the brief), for plaintiff-appellee.

Before LUMBARD, Chief Judge and ANDERSON and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

After a non-jury trial of this copyright infringement action in the United States District Court for the Southern District of New York before Harold R. Tyler, Jr., J., Thomas Wilson & Company, Inc. obtained injunctive relief against Irving J. Dorfman Company, Inc., and a damage award of $84,211.54. Dorfman claims on appeal that the trial judge erred both in holding it liable and in computing damages. For reasons given below, we reject these arguments and affirm.

Plaintiff Wilson is a manufacturer of lace for use in ladies' lingerie. Defend-ant Dorfman sells the same product, although it is a jobber, engaging contractors to make the goods it sells. In 1964, plaintiff obtained a copyright on a pansy lace design first embodied in an elastic "spandex" fiber. The next year, plaintiff secured a second copyright on an adaptation of this design in a rigid nylon fiber. This nylon pattern was purchased in substantial quantities by a single customer, The Warner Brothers Company. Not long after plaintiff began selling lace of this design to Warner, the latter's Purchasing Director suggested to defendant's vice president that it produce a lace "which would have the look" of plaintiff's design, and gave defendant a sample of plaintiff's lace from which to work. Defendant was asked to produce the lace on a so-called "Raschel" lace machine, a cheaper method than using the "Leavers" type machine plaintiff used. Defendant complied with the request, obtaining a contractor which produced for it what Judge Tyler called "a simply marvelous job in [making] * * * a very close copy of the plaintiff's" design. Warner apparently agreed with this characterization, for it purchased from Dorfman 205,394 yards of the copy of plaintiff's lace at a total price of $275,366. These sales are the subject of the lawsuit.

The case, therefore, is an unusual one. There is no question of access; the fact of copying is now clear. Although the computation of damages is attacked on appeal, we do not have the more obvious problems on damage. Plaintiff's lost sales and defendant's infringing sales coincide. Plaintiff sold its design exclusively to Warner once it began selling to it, and similarly defendant sold its infringing pattern only to Warner. Therefore, it is plain that what Warner purchased from defendant, Warner would have bought from plaintiff had defendant not infringed. However, there are other damage questions raised before us as well as fundamental issues going to the validity of the copyrights and the conduct of the trial. To the latter we now turn.

## I.

Defendant claims that either or both of plaintiff's copyrights are invalid for a number of reasons, principally lack of creativity and defective notice of copyright. As to the former concept, neither the Constitution nor the Copyright Act refers to originality in the creative sense. 17 U.S.C. § 4 provides that:

The works for which copyright may be secured * * * shall include all the writings of an author.

This spare, yet inclusive, language tracks the constitutional provision, Article I, section 8. 17 U.S.C. § 5 lists some of the classes of work that are embodied within the flexible concept of "writings." Among them are "works of art, models or designs for works of art,"[1] the category in which copyright was claimed and obtained in this case. Therefore, in sharp contrast to a patent, cf. 35 U.S.C. §§ 101, 103, the requirement of originality in the creative sense does not appear in the statute.

▇ Moreover, the required creativity for copyright is modest at best. It has been variously described as "little more than a prohibition of actual copying"[2] or something more than a "merely trivial" variation,[3] or "enough" if it be the author's own, "no matter how poor artistically." Alfred Bell & Co. v. Catalda Fine Arts, 191 F.2d 99, 103 (2d Cir. 1951). Plaintiff's pansy design was created by its own staff. The configuration of the design, including such details as petals and leaves, required an appreciable amount of creative skill and judgment. Copyright protection for floral design is not unknown. See H. M. Kolbe Co. v. Armgus Textile Co., 279 F.2d 555 (2d Cir. 1960), 315 F.2d 70 (2d Cir.

1963); Peter Pan Fabrics, Inc. v. Candy Frocks, Inc., 187 F.Supp. 334 (S.D.N.Y. 1960); cf. Prestige Floral, S.A. v. California Flower Co., 201 F.Supp. 287, 291 (S.D.N.Y.1962). While plaintiff's lace design is not what the phrase "work of art" ordinarily calls to mind, it possesses more than the "faint trace" of originality required. See Dan Kasoff, Inc. v. Novelty Jewelry Co., 309 F.2d 745, 746 (2d Cir. 1962).[4]

▇ Defendant also offers other reasons why plaintiff should be barred from enforcing its copyrights, principally plaintiff's alleged failure to comply with the notice provisions of 17 U.S.C. § 10. As to that, defendant makes two arguments in this court: first, that plaintiff distributed significant amounts of lace without any copyright notice at all, and second, that the notice on some lace was insufficient. As to the former claim, Judge Tyler flatly ruled against defendant, and the judge's finding was not clearly erroneous. As to the latter, relying on H. M. Kolbe Co. v. Armgus Textile Co., supra, defendant tells us that a single copyright notice sticker for a bolt of 125 yards of the lace design was insufficient. Assuming arguendo that to be so, we do not know whether plaintiff sold its lace design in that way; certainly the judge made no such finding. At trial, plaintiff proved ownership of a validly issued copyright and defendant's copying, which alone established a prima facie case of infringement under the statute. Stuff v. E. C. Publications, Inc., 342 F.2d 143 (2d Cir.), cert. denied, 382 U.S. 822, 86 S.Ct. 50, 15 L.Ed.2d 68 (1965). Plaintiff also introduced evidence showing prima facie compliance with the notice requirements of the copyright law. Thereafter, the

---

1. 17 U.S.C. § 5(g).

2. Hoague-Sprague Corp. v. Franc C. Meyer, Inc., 31 F.2d 583, 586 (E.D.N.Y.1929).

3. Chamberlin v. Uris Sales Corp., 150 F.2d 512, 513 (2d Cir. 1945).

4. Defendant relies on the refusal of Judge Frankel to grant a preliminary injunction in May 1967. While the judge was

not overwhelmed by "the creative activity" embodied in plaintiff's design—nor are we —he did not decide whether the material was copyrightable. The preliminary injunction was denied for other reasons, principally the presence of sharply contested issues of fact, plaintiff's delay in seeking preliminary relief, and the adequacy of its damage remedy. 268 F.Supp. 711.

burden of establishing that plaintiff labelled and shipped its lace with insufficient notice rested on defendant. Defendant offered little evidence on this precise issue and failed to meet that burden, apparently because it did not press the point before Judge Tyler. Indeed, plaintiff's attempt early in the case to amplify the record with regard to its compliance with the notice provisions was stopped by the judge after defendant's objection, apparently on the theory that it was not yet relevant to a defense "real or possible." Under these circumstances, defendant should not be able to raise the point here.[5] Therefore, it is unnecessary to consider the substantial questions of notice discussed in the two *Kolbe* opinions [6] and in Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487 (2d Cir. 1960). See Ehrlich, Copyright of Textile Designs—Clarity and Confusion in the Second Circuit, 59 Mich.L.Rev. 1043 (1961).

■■ Defendant also claims that the applications for copyright were deficient because in both applications the president of plaintiff corporation instead of the corporation was named as the "author," [7] and the application for the second copyright failed to refer to the first. The former error was minor, was made in good faith, and could not have affected the action taken by the Copyright Office. Pantone, Inc. v. A. I. Friedman, Inc., 294 F.Supp. 545, 551 (S.D.N.Y. 1968). The second was potentially more serious since it is arguable that if the material for which successive copyrights are sought is identical, this is an attempt to obtain an unjustifiable extension of copyright monopoly. However, there is

no indication that plaintiff so intended here; the omission was clearly innocent. The great bulk of defendant's infringing sales came after it was served with plaintiff's complaint, which certainly put it on notice at least of the second copyright, which covered the same design as the first, although for a different material. Under these circumstances, we do not believe that plaintiff should be denied the protection of its copyright. Cf. Davis v. DuPont de Nemours & Co., 240 F.Supp. 612, 624–626 (S.D.N.Y.1965); Wrench v. Universal Pictures, Inc., 104 F.Supp. 374, 379 (S.D.N.Y.1952).

■ Defendant also argues that Judge Tyler improperly allowed plaintiff to amend the pleadings and the pre-trial order to include a claim of infringement of the first copyright, which covered the spandex version of the design. Defendant claims prejudice because of plaintiff's failure to sue originally on the first copyright as well as on the second. The alleged "prejudice" is that defendant "may well have been advised by its counsel" to stop manufacturing the infringing lace, apparently because defendant "had depended upon such first-issued copyright as invalidating the second-issued copyright." [8] However, we doubt that the possibility of guessing wrong as to the validity of a known copyright is relevant "prejudice." In any event, the judge's ruling allowing the amendments was clearly within his discretion. Moreover, at trial defendant's counsel explicitly withdrew his earlier objection. We have considered defendant's other arguments on the liability phase of the case and consider them without merit.

---

5. Defendant claims that plaintiff's counsel "admitted in its brief" (at p. 14) in this court that plaintiff applied only one copyright sticker to a bolt of 125 yards of lace. Assuming arguendo that the record on appeal could be thus belatedly expanded, we do not read plaintiff's brief as making such an admission.

6. 279 F.2d 555 (2d Cir. 1960) (affirming preliminary injunction), 315 F.2d 70 (2d

Cir. 1963) (affirming final injunction). This litigation terminated in a damage award which was affirmed in open court. H. M. Kolbe Co. v. Armgus Textile Co., No. 28686 (2d Cir. Apr. 24, 1964).

7. Under 17 U.S.C. § 26, "the word 'author' shall include an employer in the case of works made for hire."

8. Brief for Appellant at 12.

## II.

We turn now to damages, which are attacked on a number of counts. As indicated, the judge awarded plaintiff $84,211.54, together with costs, but denied attorneys fees. This figure was the total of two items: $22,593.34, representing the lost profit on sales plaintiff would have made to Warner in the absence of the infringement, and $61,-618.20, representing the profit made by defendant on its sales to Warner. Appellant complains that this award was improper under the statute and the court's own order, that the sum was based upon "weird and clearly erroneous calculations," and that it was "unconscionably punitive." Defendant's adjectives are exaggerated, but the total award of over $84,000 is high enough to make defendant's protest understandable. However, after the careful examination called for by this award, we find that the trial judge had ample basis for his action and that his award was not improper.

■ The statutory point depends upon a construction of 17 U.S.C. § 101(b), which provides that a copyright infringer shall be liable:

> To pay to the copyright proprietor such damages as the copyright proprietor may have suffered due to the infringement, *as well as* all the profits which the infringer shall have made from such infringement, and in proving profits the plaintiff shall be required to prove sales only, and the defendant shall be required to prove every element of cost which he claims, or in lieu of actual damages *and* profits, such damages as to the court shall

appear to be just * * *. [Emphasis added.]

Thus, the statute twice refers to a cumulative award of the proprietor's damages *and* the infringer's profits. Despite this, defendant argues that only plaintiff's damages ($22,593.34 lost profits on lost sales) or defendant's profits ($61,618.20 on infringing sales) but not both should have been awarded. While the statute seems clear, defendant's argument is not frivolous and finds support in a portion of the legislative history.[9] However, in Peter Pan Fabrics, Inc. v. Jobela Fabrics, Inc., 329 F.2d 194 (2d Cir. 1964), we squarely faced the issue and thoroughly canvassed the authorities. In accepting the harsher "cumulative" rule, we specifically relied on the rationale that it is "designed to discourage wrongful conduct," quoting that language from F. W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 233, 73 S.Ct. 222, 97 L.Ed. 276 (1952). This interpretation of section 101(b) has been criticized,[10] as well as supported,[11] but we assumed its continuing validity only last term. Alouf v. Expansion Products, Inc., 417 F.2d 767 (2d Cir. 1969). Of course, whether the rule is, or can be, too harsh, as defendant asserts, is arguable; when the same customer is involved, as here, in both plaintiff's lost sales and defendant's infringing sales, objection to the rule is at its strongest. But the Congress is not unaware of the problem, since proposals to modify this aspect of the statute have been pending there for some time.[12] In any event, we believe that even on these facts the rationale of *Jobela* commits us. Since our examination of the rule has been so recent, we

---

9. H.R.Rep.No.2222, 60th Cong., 2d Sess. 15 (1909).

10. Nimmer, Copyright § 154.13 at 682–83 (1969); Comment, Joint and Several Liability for Copyright Infringement: A New Look at Section 101(b) of the Copyright Act, 32 U.Chi.L.Rev. 98, 107–109 (1969).

11. Amdur, Copyright Law and Practice 1117 (1936).

12. See, e. g., H.R. 2512, 90th Cong., 1st Sess. (1967); S. 543, 91st Cong., 1st Sess. (1969). See also Copyright Law Revision, Report of the Register of Copyrights on the General Revision of the U. S. Copyright Law 107, printed for the use of the House Committee on the Judiciary, 87th Cong., 1st Sess. (Comm.Print 1961); Comment, Monetary Recovery Under the Copyright Patent and Trademark Acts, 45 Texas L.Rev. 953, 961–64 (1968).

decline to reconsider it and will continue to abide by it.

Accordingly, Judge Tyler could award both items of damage, as he did. Defendant also claims that the judge erred because he was compelled to award statutory damages "in lieu" of actual damages and profits. This is simply an incorrect statement of the law. Putting to one side whether the judge could ignore adequate proof of both damages and profits, at the very least he had discretion on whether to resort to the "in lieu" damage provision. *See Woolworth, supra,* 344 U.S. at 232–233, 73 S.Ct. 222, 97 L.Ed. 276.

The real question on damages is whether the proof was sufficient to support the court's calculations, or whether the latter were really "weird," as defendant asserts. This aspect of defendant's attack focuses entirely on the finding that its profit on sales of the infringed pattern amounted to $61,618.20. Defendant apparently agrees, at least in this court, that plaintiff's profit on lost sales would have been $22,593.34. The figure of $61,618.20 was calculated by taking defendant's average selling price of $1.34 per yard, and subtracting therefrom the highest direct cost incurred by defendant, about 98¢ per yard, as well as allocable indirect costs of five cents per yard. This showed a total cost of $1.04 per yard, yielding a net profit of 30¢ per yard. The total number of yards, 205,394, multiplied by 30¢ produced the net profit of $61,618.20.

Defendant contends that the 30¢ per yard profit did not apply to years other than 1966, that even for that year the average selling price was $1.25, not $1.34, and that certain other indirect costs and direct costs should have been included in the computation. It is true that a comparison of profit margins used by Judge Tyler on what presumably would have been sales of the same product is a little startling: 11¢ per yard for plaintiff and 30¢ per yard for defendant. This may have been due in some part to a greater expenditure by plaintiff for advertising its products; a copier need obviously invest less in that area. Perhaps the difference in net profit was due to inadequate proof of defendant's costs. If so, defendant is in no position to complain of that now. Under the statutory presumption quoted above, 17 U.S.C. § 101(b), in order to recover defendant's profits plaintiff had only to prove defendant's sales; the burden of proving "every element of cost" which defendant claimed was upon it. The presumption was specifically called to the attention of defendant's counsel at the trial, two weeks before the evidence as to defendant's costs was presented. Therefore, any omissions from the record of items of defendant's costs should have been supplied by it.

If we thought that defendant had been treated unfairly in putting on its case, we would view the matter differently. But there was a ten-day interval between the order determining liability and the hearing on damages, and plaintiff indicated that it was seeking the profits on defendant's sales as well as plaintiff's own lost profits. Defendant claims that Judge Tyler had indicated that the damage hearing would be confined to the latter item only. There is some support for this in the record but when defendant was disabused of this notion, it did not ask for an adjournment; nor did it seek thereafter to reopen the record. In view of the clear statement by plaintiff's counsel at the damage hearing that it was relying on section 101(b) to recover both damages and profits, there simply could not have been any further justifiable surprise. While the damages are high, they were not intended to be "punitive." In fact, the judge denied attorneys fees to plaintiff for exactly that reason. Moreover, in light of evidence showing that defendant's direct costs varied from approximately 98¢ per yard to 82¢ per yard, use of the highest cost figure in computing defendant's profits might even be characterized as "conservative." Nor is the result "unconscionable" in

view of the clear evidence of copying.[13] Accordingly, since all of the figures used by the court are supported by the record, no reversible error was committed.

The orders appealed from are affirmed.

---

13. Plaintiff's counsel aptly characterized Warner's instruction to defendant Dorf- man as "make it for me the same but different."