**CONSOLIDATED MUSIC PUBLISHERS, INC., Plaintiff,**

v.

**HANSEN PUBLICATIONS, INC., et al., Defendants.**

**No. 71 Civ. 4923.**

United States District Court, S. D. New York.

March 24, 1972.

Zissu, Marcus & Stein, New York City, for plaintiff; James W. Mosher, New York City, of counsel.

A. Walter Socolow, New York City, for defendants.

OPINION

EDWARD WEINFELD, District Judge.

Plaintiff commenced this action for copyright infringement and moves pursuant to Rule 65 of the Federal Rules of Civil Procedure for a preliminary injunction to enjoin the defendant Hansen Publications, Inc., its subsidiaries, affiliates and all persons acting in concert with them, from further infringing plaintiff's copyright of its guitar instruction book entitled "RHYTHM GUITAR/Volume 57/Music for Millions Series". The alleged offending book published and marketed by the defendant is entitled "Sounds of the Seventies/RHYTHM GUITAR, Book 1 for Beginners."

The plaintiff's book was authored by Harvey Vinson during 1968 and 1969 pursuant to an employment agreement with plaintiff. Its object is to provide a comprehensive but easy to understand "self teacher" book on the fundamentals of playing the guitar in the style that is used in modern "rock" music. It was published with proper copyright notice on October 28, 1969, and registered by plaintiff as proprietor in the United States Copyright Office on October 31, 1969. The book enjoyed immediate and unusual success, selling more than 6000 copies in the first six months; over 14,000 have been sold to date and the book continues to enjoy steady sales.

The alleged infringing book was published in 1970 and names defendant Bill Oliver as author on both its cover and title page. Its title page contains a copyright notice reading: "All Exercise Material is Copyright © 1970 by California Music Press." [1]

Plaintiff charges that defendant's book is a plagiarism and, therefore, an infringement of its copyright. The defendant challenges the validity of the plaintiff's copyright, alleging that plaintiff's book is not a new and original creative work, and further contends that its own book is not a substantial copy of plaintiff's, any similarity being due to the common subject matter.

[1] The test for determining copyrightability is originality, which refers to individuality of expression or independent creation and not to novelty in the subject matter.[2] As defined by our Court of Appeals in Alfred Bell & Co. v. Catalda Fine Arts: [3]

> " 'Original' in reference to a copyrighted work means that the particular work 'owes its origin' to the 'author.' Said the Supreme Court in Baker v. Selden, 101 U.S. 99, 102–103 [25 L.Ed. 841] . . .: 'The copyright of the book, if not pirated from other works, would be valid without regard to the novelty, or want of novelty, of its subject-matter. The novelty of the art or thing described or explained has nothing to do with the validity of the copyright. . . .
>
> ". . . [N]othing in the Constitution commands that copyrighted matter be strikingly unique or novel. . . . All that is needed to satisfy both the Constitution and the statute is that the 'author' contributed something more than a 'merely trivial' variation, something recognizably 'his own.' Originality in this context 'means little more than a prohibition of actual copying.' No matter how poor artistically the 'author's' addition, it is enough if it be his own."

---

1. Bill Oliver and California Music Press are named as defendants. Plaintiff, however, states it has no information as to where either Oliver or California Music Press may be found; for that reason this motion is brought only against defendant Hansen, "the sole defendant plaintiff is at this time able to serve."

2. Chamberlin v. Uris Sales Corp., 150 F.2d 512 (2d Cir. 1945); Trebonik v. Grossman Music Corp., 305 F.Supp. 339, 346 (N.D.Ohio 1969); Pantone, Inc. v. A. I. Friedman, Inc., 294 F.Supp. 545, 548 (S.D.N.Y.1968).

3. 191 F.2d 99, 102–103 (2d Cir. 1951) (footnotes omitted).

Recently, in Trebonik v. Grossman Music Corp.,[4] the court applied the foregoing test of copyrightability and upheld the validity of plaintiff's copyright on a device called "Chord-O-Matic" for organizing guitar chords, holding the copyright infringed by defendant's booklet which enabled its user to effect the same result as "Chord-O-Matic." The same test was again applied in Pantone, Inc. v. A. I. Friedman, Inc.,[5] where the court said that "originality or even the slightest degree, even if it amounts to no more than a rearrangement of age-old ideas, is sufficient."[6] The copyright sustained was of a booklet containing a color matching system.

■ Plaintiff's book is exactly what it purports to be—an instruction book, through the study of which and the playing of the musical material as directed, one can acquire proficiency in playing the rhythm guitar. It is filled with instructions addressed in a personal vein to the student and assembles a great variety of exercises to be played by him. When accorded the benefit of the statutory presumption of copyright validity given to the book by the certificate of registration issued by the Copyright Office,[7] it easily satisfies the test of copyrightability.

Defendant further contends that plaintiff's book contains nothing new or original other than trivial material and is therefore not copyrightable, and spe-

cifically charges that plaintiff's book is based on a work published and copyrighted in 1966 by Alfred Music Co., Inc. At the outset, it is observed that although plaintiff's book was published in 1969 and has met with marked commercial success, Alfred does not appear ever to have challenged or even called into question the validity of plaintiff's copyright. Aside from the statutory presumption in favor of the validity of plaintiff's copyright, a comparison of the Alfred book with plaintiff's establishes beyond question that plaintiff's has not been copied and indeed underscores the fact that it is thoroughly original. The two books have substantially different organizations and share little similarity in their explanatory material. The significant difference in plaintiff's arrangement and presentation, as well as in language, from Alfred's demonstrates that there are various ways of presenting this type of instructional material and supports the conclusion that plaintiff's work is indeed copyrightable.

■ Having concluded that plaintiff's copyright is valid, we reach the issue of infringement. Defendant's access to plaintiff's book is beyond dispute. Plaintiff's book was put on the market in October 1969 and defendant itself dealt in the book through its wholesale and retail subsidiaries. With access thus established, we compare the books themselves to determine whether simi-

4. 305 F.Supp. 339 (N.D.Ohio 1969).

5. 294 F.Supp. 545 (S.D.N.Y.1968).

6. *Id.* at 548. *See also* Gelles-Widmer Co. v. Milton Bradley Co., 313 F.2d 143, 147 (7th Cir.), cert. denied, 373 U.S. 913, 83 S.Ct. 1303, 10 L.Ed.2d 414 (1963) (educational type flash cards) ; Peter Pan Fabrics, Inc. v. Dixon Textile Corp., 280 F.2d 800, 802 (2d Cir. 1960), on remand, 188 F.Supp. 235 (S.D.N.Y.1960) ; Amplex Mfg. Co. v. A. B. C. Plastic Fabricators, Inc., 184 F.Supp. 285 (E.D.Pa. 1960) ; Peter Pan Fabrics, Inc. v. Acadia Co., 173 F.Supp. 292 (S.D.N.Y.), aff'd

sub nom. Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487 (2d Cir. 1959).

7. 17 U.S.C. § 209 ; Covington Fabrics Corp. v. Artel Prods., Inc., 328 F.Supp. 202 (S.D.N.Y.1971) ; H. M. Kolbe Co. v. Armgus Textile Co., 184 F.Supp. 423 (S.D.N.Y.), aff'd 279 F.2d 555 (2d Cir. 1960) ; Home Art, Inc. v. Glensder Textile Corp., 81 F.Supp. 551, 552 (S.D.N.Y. 1948) ; Edward B. Marks Music Corp. v. Wonnell, 61 F.Supp. 722, 725 (S.D. N.Y.1945).

larities between them justify the inference that one was copied from the other.[8]

Analytical examination of the two works, fortified by exhibits containing illustrative material taken from them, shows close similarities in language—in some instances so close as to be substantially identical and to compel the inference that one must have been copied from the other. An exhibit, consisting of almost nine closely typed pages, sets out the parallelisms in the verbal text of the two books.[9] Among these we find:

### PLAINTIFF'S BOOK

*Page*

7–8

Place the pick [10] against the string nearest you. Don't play it yet. The only point of contact the right hand has with the guitar is with the pick. The string you've got your pick on is the 6th string and it is also the thickest string.

Play the 6th string by pushing down and off the string with the pick coming to rest on the next string, the 5th string.

Play the 5th string the same way coming to rest on the 4th string. Play the 4th, the 3rd and the 2nd strings in the same manner finally playing the 1st string (the thinnest and the one nearest the floor). Now start over with the 6th string and repeat the whole process many times gradually speeding up until you're playing all six strings with one continuous downward motion.

9

Finger and play this A chord just like you did the E chord. Try to correct any buzzing strings before you go on.

23

You're becoming a rock guitarist. The tuning is coming along and you know the five basic chords of rock 'n roll. Before leaving this introductory section, we'll take up a slightly more sophisticated chord: the dominant seventh.

### DEFENDANT'S BOOK

*Page*

7

Place the plectrum [10] against the string nearest to you. The right hand does not come into direct contact with the guitar; the only point of contact with the strings is made by the plectrum. The plectrum is now resting on the 6th string. It will also be noticed that it is the thickest.

Play the string by pushing down and off the string with the plectrum, coming to rest on the 5th string. Play the 5th string in exactly the same way, this time coming to rest on the 4th string. Do the same with the 4th, the 3rd and the 2nd strings, finally playing the 1st string which is the thinnest. Look upon this as your first exercise and repeat the whole process many times, starting slowly and gradually speeding up until all six strings are being played with one continuous downward sweep of the plectrum.

9

Finger and play the A chord just as you did the E chord. Remember to correct any buzzing that might occur.

19

By now, you are well on the way to becoming a rhythm guitarist. You have learned the five basic chords mostly used in Rock 'n Roll music, but before we go on to another section, let us investigate a slightly more sophisticated chord: The "Dominant seventh" (From here on, it will be referred to as the "Seventh").

---

8. *Cf.* Lewys v. O'Neill, 49 F.2d 603 (S.D. N.Y.1931).

9. Vinson affidavit, Exhibit E.

10. "Pick" and "plectrum" are different names for the same device which is used to play the guitar strings.

*Page*

31

After that last lesson, you're entitled to an easy lesson. With your knowledge of the bar chord, you can easily play many of the special effects that rhythm guitar players use. One of the more frequently used effects is the staccato strum.

45

This 7th chord has the same letter name as the *root 6 bar chord* and you locate it the same way.

*Page*

38

Having accomplished so much in such a short space of time, we now turn to an easier lesson. Knowing as much as you do about bar chords you will be able to employ many special effects that most rhythm guitarists use these days. One of the most popular is the 'staccato' strum.

31

These 7th chords have the same letter name as the respective root 6 bar chords and they are located in the same way.

———◆———

The foregoing examples of parallelisms of text are merely typical of others with which the book abounds. An examination reveals instance after instance of similarities, and usually following the sequence of plaintiff's instructions. It would unduly prolong this opinion to enumerate additional examples. The parallelisms of text are the more striking and significant when it is recalled that the instructions are addressed directly to the pupil in a personal vein. The writing is imaginative in tone and style. Comparison of the two books readily reveals that defendant's book flagrantly copies the textual language of plaintiff's book. The minor changes, additions and paraphrases expose rather than conceal the plagiarism; they emphasize the deliberateness of the copier's action. The instances of similarity of language are so numerous that defendant's claim they are merely the inci-

dental use of common descriptive terms of instructions challenges common experience.[11] A finding of infringement might well rest on the defendant's copying of the verbal text, irrespective of the other contents of its book.

Plaintiff, however, offers additional proof. The structure and organization of defendant's book is so close to the structure and organization of plaintiff's as to warrant, also on this ground, a finding of copying.[12] Viewed in conjunction, the similarities of language and the parallelisms of form are so pervasive and substantial as to give rise to a strong inference of deliberate copying; any denial of copying falls of its own weight.[13]

Plaintiff has made out a prima facie case of infringement and a reasonable probability that it will prevail on the merits, and this is sufficient to entitle it to a preliminary injunction.[14] As our

11. *Cf.* College Entrance Book Co. v. Amsco Book Co., 119 F.2d 874 (2d Cir. 1941).

12. *See* Vinson affidavit and Exhibits F through K thereto.

13. *Cf.* Joshua Meier Co. v. Albany Novelty Mfg. Co., 236 F.2d 144, 147 (2d Cir. 1956).

14. Robert Stigwood Group Ltd. v. Sperber, Docket No. 71-2057, 457 F.2d 50 (2d Cir. March 17, 1972) ; American Metro-

politan Ent. v. Warner Bros. Records, Inc., 389 F.2d 903, 905 (2d Cir. 1968) ; Uneeda Doll Co. v. Goldfarb Novelty Co., 373 F.2d 851, 852 n. 1 (2d Cir. 1967) ; Joshua Meier Co. v. Albany Novelty Mfg. Co., 236 F.2d 144, 147 (2d Cir. 1956) ; Rushton v. Vitale, 218 F.2d 434, 436 (2d Cir. 1955) ; Covington Fabrics Corp. v. Artel Prods., Inc., 328 F.Supp. 202, 205 (S.D.N.Y.1971) ; Pantone, Inc. v. A. I. Friedman, Inc., 294 F.Supp. 545,

Court of Appeals recently reiterated, "once a prima facie case of infringement has been made out, a preliminary injunction should issue, even in the absence of a detailed showing of irreparable injury . . . since 'a copyright holder in the ordinary case may be presumed to suffer irreparable harm when his right to the exclusive use of the copyrighted material is invaded.' "[15]

The motion for a preliminary injunction as prayed for is accordingly granted.

Counsel may present memoranda as to the amount of the undertaking to be posted by plaintiff on the settlement of the order.

Settle order on notice.

552 (S.D.N.Y.1968) ; Consolidated Music Publishers, Inc. v. Ashley Publications, Inc., 197 F.Supp. 17, 19 (S.D.N.Y.1961).

15. Robert Stigwood Group Ltd. v. Sperber, Docket No. 71–2057, —— F.2d —— (2d Cir. March 17, 1972).