MEREDITH CORPORATION, an Iowa Corporation, Plaintiff,

v.

HARPER & ROW, PUBLISHERS, INC., et al., Defendants,

Brian Sutton-Smith, an Individual and Prentice-Hall, Inc., a Delaware Corporation, Additional Defendants on Counterclaims.

No. 73 Civ. 5446.

United States District Court, S. D. New York.

Sept. 5, 1975.

Howard Abrahams, New York City, George P. McAndrews, and George Nevitt, for plaintiff Meredith Corp.

Edward A. Miller, New York City, and James Fox, for defendant Harper & Row.

Lankenau, Kovner, Bickford & Abrons by John C. Lankenau, Nathan J. Bickford, and Victor A. Kovner, New York City, for defendants Mussen, Conger and Kagan.

Hahn, Hessen, Margolis & Ryan by Marshall C. Berger, New York City, for additional defendant Smith.

Wayne Carson, New York City, for additional defendant Prentice-Hall, Inc.

OPINION

OWEN, District Judge.

Following the ten-day trial of this action, plaintiff Meredith Corp. and additional defendants Brian Sutton-Smith and Prentice-Hall, Inc. conceded in their post-trial memorandum: "It is apparent from the record and in fairness to the Court and to the other parties, plaintiff and additional defendants are prepared to admit, based on a detailed study of the record, that in some respects (involving less than eleven percent of the Brian Sutton-Smith book) something more than fair use of the Mussen, Conger and Kagan text was made." (Br. p. 13). And further that " . . . on less than eleven percent of the book, the evidence appears to show that where the source material (abstracts, studies, researches, notes, class notes, etc.) supplied was inadequate, the writers relied too heavily on MCK [Mussen, Conger and Kagan] textual material and plagiarism did occur." (Br. p. 33).

On the basis of the foregoing with the record on the trial fully supporting the findings and conclusions I reached in my decision of May 29, 1974 on the motion for preliminary injunction herein, *Meredith v. Harper & Row, Inc.*, 378 F.Supp. 686 (S.D. N.Y.1974) which findings and conclusions I incorporate as part of this opinion, it would appear there would be no need for further discussion on the issue of plaintiff's and additional defendants' infringement of Harper & Row's uncontested copyright in the Mussen text.

However, plaintiff and additional defendants argue that the remaining eighty-nine percent of the Meredith book was the product of independent research, expression and

386

treatment and any similarity in the subject matter covered between the Mussen and Meredith texts is due to the fact that both books deal with the subject of child psychology from the chronological approach. Accordingly, they argue that this Court must hold that the rights of Harper & Row do not extend to the eighty-nine percent of the Meredith book in which there has been no demonstration that the language employed was plagiarized from Mussen.

Passing the issue of whether an admitted substantial infringer is entitled to Court review of every corner of the infringing book for the purpose of excising the plagiarized portions from those which are not, the simple answer to the contention raised is that the record demonstrates and I find, as I found in my opinion of May 29, 1974, an extensive taking of the structure and topical sequence of the Mussen book in addition to the eleven percent of the Meredith book admittedly plagiarized.

In evidence on the trial in addition to the two books involved in this action, were four other leading texts in the field of child psychology. A comparison of all the texts with a chapter-by-chapter review of Mussen reveals that the percentage of Mussen topics covered in the Meredith book is many times greater than that covered in the four other leading books, including the Stone & Church and CRM books, which also use a chronological approach. Similarly, topics contained in a particular chapter of Mussen that are covered as well in other books are much more frequently found in two or more chapters in the four non-Meredith texts while they are found relatively more often in just one chapter of the Meredith book. Additionally, in nearly every chapter of the Mussen text there can be found an arrangement of topics under main headings which has been substantially duplicated in the Meredith text. No such extensive duplication occurs in any of the other leading texts.

It is clear that the unusually high correlation in topic sequencing between the Mussen and Meredith texts was the result of copying and not the coincidental outcome of an independent structuring by Meredith. As I pointed out in my previous opinion, after Meredith had conducted a market research study of the child psychology textbook field, a memorandum was written stating that Meredith selected the Mussen text to serve as the content model for its child psychology textbook "in terms of topics to be included, weighting of topics and sequencing of the topics." Thereafter Meredith systematically outlined the chapters of the Mussen book and incorporated them in very substantial part into the Meredith outlines, which outlines eventually were reflected in great part in the final text. The outlines for the Meredith text on the other hand do not reflect the use in any substantial way of original outlines which previously had been prepared by the book's "author", Professor Sutton-Smith. The Meredith outlines themselves contain repeated references to the Mussen text and specific portions therein. Further evidence of direct appropriation of the Mussen structure is shown by the fact that in connection with preparing outlines for chapters 12 and 13 of the Meredith book, a writer was instructed in a memorandum to "cover topics in MCK 12 and 13." The writer was also given tear sheets of the Mussen book for use in preparing the Meredith outline.

Meredith did perform a small amount of independent research in preparation of its book but most, if not all, was done *after* the outlines determining the content of the Meredith book had been prepared. Much of the research that was done was for the purpose of substituting other studies in place of those contained in the Mussen book, sometimes with the effect of substituting a lesser study for a more important one. The total amount of money devoted to scholarly research including that for the substitution of studies, was in the neighborhood of $2,000 to $3,000, hardly indicative of a substantial independent effort to arrive at a sequencing of topics. Similarly the time spent in formulating the Meredith text was only a fraction of the 17,000 hours spent by the Mussen authors in the preparation of their book. Circumstances surrounding the preparation of the teacher's

manual to accompany the Meredith book also are indicative of the overall copying of the structure of the Mussen book by Meredith. At a time when only two chapters of the Meredith text had been prepared, a copy of Mussen was sent to the author preparing the Meredith teacher's manual with a letter stating that "This book will give you a better idea of what goes into succeeding chapters until you receive our manuscript."

Thus I conclude that while the Meredith text contains *some* independent ideas of the author, *some* independent research, *some* additional topics and *some* differing structure, the topic selection and arrangement of the Meredith book are in substantial part the result of copying of the Mussen book not attributable to independent effort by Meredith or the necessary result of limited possibilities for organizing and presenting the material to be covered. *Consolidated Music Publishing, Inc. v. Manson Publications, Inc.,* 339 F.Supp. 1161 (S.D.N.Y.1972); *Thompson v. American Law Book Co.,* 122 F. 922, 925 (2d Cir. 1903). The copying thus affects the entire text and not just the eleven percent admittedly infringed.

Professor Sutton-Smith, the "author" of the infringing text, acknowledges that whether or not the named author knowingly and willfully participated in a copyright infringement is ordinarily immaterial. In this case, however, he asks the Court to make a "specific finding that any alleged infringement was in no way the product of [his] knowing acts of commission." (Br. p. 59). I have carefully considered the question and am compelled upon highly persuasive evidence to find to the contrary.

Sutton-Smith's awareness of an intention to use Mussen as the basis of his book, appears from the very outset. He had originally prepared and submitted an outline for a proposed textbook of his own to a number of publishers. Nothing ever came of this. After he was engaged to participate in the Meredith text, he submitted the same outline to Meredith. However, that outline was rejected for the obvious reason that Meredith's market report indicated Mussen should be used as the model book, see *supra.*

Thereupon Sutton-Smith pursuant to that determination prepared a new outline for Meredith of the first three chapters of the proposed new book made up of topics taken from Mussen and annotated to the pages of Mussen where those topics appear. These chapter headings were renumbered by a Meredith editor and the material found its way into the renumbered chapters of the Meredith published text. Sutton-Smith then prepared an outline of proposed chapters 8 through the end of the book. Here, too, he made reference to Mussen for the broad coverage of each of his proposed chapters and, as to chapter 8, he detailed the individual topics themselves in the order they appear in Mussen's chapter 8. Thus, from the beginning, Sutton-Smith was directing the attention of the Meredith editors and free-lance writers to Mussen and in some instances to the very pages of Mussen to be used.

Sutton-Smith also sent various memoranda to Meredith. For example, one outlined chapter 1 using Mussen page references; another directed Miss Small, a Meredith editor, to several pages of Mussen in connection with chapter 2; another listed and annotated topics from Mussen for use in chapters 5, 6 and 7 and stated "Mussen have good coverage of faces, babbling, smiling, crying and sucking. Tho, put babbling in 3d chapter."; another suggested that Meredith use " . . . the present chapter 8 . . . " of Mussen; another stated as to chapter 9, " . . . my assumption is that you will follow MCK fairly closely . . . "; another advised the use of chapter 11 of MCK in the preparation of chapter 10 of the Meredith book; another suggested with regard to chapter 14, "Mussen, Kagan and Conger's material is pretty adequate but could be condensed except for cognition which needs enlarging and that can come from Opper & Ginsberg.[1]"; another typed memorandum entitled "after MCK" con-

---

1. Another competing text in the field.

tained a detailed outline of topics from Mussen's chapter 15 on adolescence, and set forth in the same order each of the three capitalized subject headings found in Mussen at pp. 689, 695 and 703.

When questioned on the trial about the references to Mussen in the Meredith outlines he was furnished during the project, one of Sutton-Smith's answers, while guarded, was illustrative of his state of mind:

"Well, my assumption would have been at the time that there was some study or some element of MCK that they were going to quote, some primary source of MCK they were going to use or quote MCK. That would be my assumption from seeing it there.

He was obviously clearly aware that Mussen was being used in the preparation of the Meredith textbook.

Finally Sutton-Smith, in reviewing drafts of various chapters, noted in the margin from time-to-time that material had been taken from Mussen. These notes were apparently designed to have the editors make alterations to conceal obvious plagiarism. For example, on the draft of chapter 5, at p. 13, Sutton-Smith wrote in red ink, "This page is a paraphrase of Mussen, Conger & Kagan . . . ."[2] In the draft of chapter 12 at p. 15, Sutton-Smith wrote variously in the margin, "This is again *too* close to MCK for comfort." "Its [sic] 'spot' by 'spot' paraphrasing." "Paraphrasing MCK p. 509 . . . ." On page 16 he wrote "A bit close to MCK p. 509." "Should mix in more

Ginsberg[3] p. 100–101." A Meredith editor wrote a comment next to Sutton-Smith's latter comment which is most illuminating, "Check MCK. Follow suggestion if close."

Sutton-Smith contends that a letter written to Meredith on July 22, 1972 in the middle of the project,[4] expressing concern with plagiarism from Mussen of Chapter 10, was the letter of "an honest man disturbed by his suspicion that there might be an infringement and wishing to eradicate any possible vestige of infringement." On the basis of proof on this trial I reject this contention. Notwithstanding the alleged agitation stated in the letter and notwithstanding Sutton-Smith's knowledge of the paraphrasing of his text from Mussen in many other areas, he accepted an oral representation of an editor of Meredith that the matter he claimed to be highly concerned about in chapter 10 had in fact come from another source. He never bothered to check the accuracy of that representation although it would have been simple to do.

In sum, I conclude that Professor Sutton-Smith was fully aware of the proposed method of preparation of the Meredith text and the direct use which was in fact made of Mussen as to both content and sequence. I conclude that he not only acquiesced but also participated in its being prepared in that fashion, seeking only to prevent blatant similarities.

Given all the foregoing, the preliminary injunction heretofore entered against any sale or distribution of *Child Psychology* by Brian Sutton-Smith, published by Meredith

---

2. Curiously and significantly on page 15 of the same chapter 5 draft, Sutton-Smith penned a proposed *addition* to the text in the same red ink, reading:

"Because girls [sic] growth is more stable than boys, it is more possible to make predictions from early to late skeletal growth. MCK p. 148."

Sutton-Smith himself wrote "MCK p. 148" at the end of his addition. It is obvious he paraphrased this himself from Mussen at p. 148 for there it reads:

"In addition, girls' growth is more stable than that of boys. The rate of skeletal maturity in the 2-year-old girl is a better predictor of her future rate of skeletal development than it is for the boy . . . ."

It is also obvious that the Meredith editors thereafter went *themselves* to Mussen p. 148 as instructed by Sutton-Smith for in the published Meredith text the phrase reads, p. 120:

"In addition, a girl's skeletal development at age 2 is a more accurate indication of her later growth than is a boy's, because skeletal growth patterns in females are more stable than they are in boys . . . ."

3. Opper & Ginsberg. See fn. p. 387, *supra*. Presumably by a skillful editorial blending of Ginsberg and Mussen, neither Ginsberg nor Mussen could have identified the section as having come from it.

4. See fn. 10, 378 F.Supp. at p. 688.

Corporation shall be made permanent. I refer the issue of compensatory damage flowing from the copyright infringement to a United States Magistrate who shall hear and report thereon. As to punitive damages, that question shall be reserved by the Court for future determination upon application of the defendants. Discovery under the Federal Rules of Civil Procedure may proceed with regard to all questions of damage.

Settle order.